UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOWELL McLAUGHLIN,
et al.,

        Plaintiffs,

   v.

COUNTY OF EL DORADO,
et al.,

        Defendants.
_____/

NO. CIV. S-10-2551 LKK/GGH

O R D E R

This case challenges the removal of children from their parents and their home. Defendants move for summary judgment or partial summary judgment in several respects. For the reasons that follow, the court will grant summary judgment to defendant Kate McCullough on all claims, and deny summary judgment in its entirety, to defendants Janice Eastburn and the County of El Dorado.[1]

////

---

[1] The County makes no separate argument about its own liability under Monell v. Dept. of Social Svcs., 436 U.S. 658 (1978). It seeks summary judgment solely on the ground that there was no constitutional violation.

1

**I.   BACKGROUND**[2]

Beginning in May 2006, plaintiffs Steven and Dowell McLaughlin and their three minor children lived in a motel room near Highway 50 in South Lake Tahoe, CA.[3] The room was inadequate for the family's needs.[4] In fact, the room was filthy, smelly and unhealthy for everyone who lived there.[5] In response to complaints, El Dorado County's Child Protective Services ("CPS") had been in contact with the family regarding the children's hygiene and diet.[6]

Ms. McLaughlin left for work on Saturday, September 20, 2008, leaving the children home with Mr. McLaughlin.[7] At some point, H.M., the youngest child, age 4, wandered away from the room without Mr. McLaughlin's knowledge.[8] At about 4:00 p.m., a County law enforcement officer, who was driving past the motel on Highway 50, spotted the child outside.[9] The child ran back inside the

---

[2] The facts recounted here are based upon defendants' Amended Separate Statement of Undisputed Facts (Dkt. No. 87), and plaintiffs' Response thereto (Dkt. No. 88-4), except where noted.

[3] See Plaintiff's Response to Defendants' Amended Separate Statement of Undisputed Facts ("SUF") (Dkt. No. 88-4) ¶ 2.

[4] SUF ¶ 4.

[5] SUF ¶¶ 16 & 17.

[6] SUF ¶¶ 5 & 6.

[7] SUF ¶ 7.

[8] SUF ¶ 10.

[9] Second Amended Complaint ("Complaint") ¶ 24; Answer to Second Amended Complaint ("Answer") ¶ 24.

1  room, telling Mr. McLaughlin (her father), that a policeman was
2  outside.[10]

3  That officer – El Dorado County Sheriff Deputy Damien Frisby
4  – then met Mr. McLaughlin at the door to the motel room.[11] Mr.
5  McLaughlin and the three children were inside, although Ms.
6  McLaughlin was not then present.[12] Deputy Sheriff Frisby did not
7  enter the room, but could see into the room through the open
8  door.[13] The deputy sheriff then told Mr. McLaughlin that he (the
9  deputy sheriff) would be taking the children away.[14]

10  At about 4:09 p.m, Christopher Webber, a City of South Lake
11  Tahoe police officer, arrived at the scene, in response to a
12  "'possible 273(a)PC – child cruelty'" call.[15] Already present on
13  the scene were Frisby, Troy Wright (a County law enforcement
14  officer), and City of South Lake Tahoe police officer Eissinger.[16]
15  Officers Webber and Eissinger entered the motel room without a
16  warrant, and inspected and photographed the motel room.[17]

17  Webber determined that the children "needed to be placed in

---

[10] SUF ¶ 11.
[11] SUF ¶ 12.
[12] Complaint ¶ 25; Answer ¶ 25.
[13] SUF ¶ 12.
[14] SUF ¶¶ 12 & 14.
[15] Complaint ¶ 30; Answer ¶ 30.
[16] Complaint ¶ 31; Answer ¶ 31; SUF ¶ 13.
[17] Complaint ¶ 33; Answer ¶ 33; SUF ¶ 15.

3

temporary custody."[18]  He asserts that:

> the children were subject to serious harm or illness as the result or inability of the parent to adequately supervise or protect them, the willful or negligent failure of the parent to provide for adequate food and shelter and the condition of the residence, among other reasons.[19]

Officer Eissinger then contacted CPS.[20]  Janice Eastburn, the social worker for El Dorado County's Child Protective Services who was "on call" that day, received a communication from a dispatcher that she was needed by the officers at the motel to take custody of three minor children "that South Lake Tahoe PD had taken into custody."[21]

---

[18] Webber's Response to Interrogatories (Dkt. No. 88-2) at p.29, No. 1.

[19] Although Webber cites "pursuant to Welfare & Institutions Code section 305," it appears that that provision only covers removal of the children from their home without a warrant, not placing them into temporary custody. See Cal. Welf. & Inst. Code § 305.  It is Section 300 that covers placing the children into temporary custody. See Id., § 300.  Thus it is not clear if Webber is asserting that he affirmatively determined that no warrant was necessary.

[20] Complaint ¶ 32; Answer ¶ 32; SUF ¶ 14.

[21] SUF ¶ 19; Eastburn Decl. at p.2.

In their response to defendants' Statement of Undisputed Facts, plaintiffs state: "Undisputed that this is Eastburn's testimony. However, see Ex. C, Ex. E., Pltfs' Response to DSUF # 14, 18, supra."  The court considers defendants' statements to be undisputed, as plaintiffs do not assert that they dispute it, nor do they direct the court to any material putting the testimony in dispute.  The same is the case for Defendants' Undisputed Statements ¶¶ 22, 23, 25, 26, 60, 64, 81 & 93. Plaintiffs' "However ..." clause does not put the testimony in dispute.  Exhibit C, according to a declaration filed by plaintiffs (Decl. Of Dennis R. Ingols, Dkt. No. 88-1), is a six-page "Police Report of Defendant Webber."  Plaintiffs do not direct the court's attention to any

4

At 4:45 or 5:00 p.m. or thereabouts, Ms. McLaughlin returned home from work.[22] As soon as Ms. McLaughlin arrived at the motel, one of the law enforcement officers told her that her children would be (or were likely to be) taken away.[23]

At 5:00 or 5:05 p.m. or thereabouts, Eastburn arrived at the scene, and identified herself to Ms. McLaughlin.[24] Upon her arrival, Eastburn observed that Mr. McLaughlin and the children were sitting or standing near the front porch of the motel room.[25] Officer Webber told Eastburn that he had investigated the living conditions inside the room, and had concluded that the room was uninhabitable.[26] Webber told Eastburn that he was taking the children into custody because of the deplorable living conditions, and because the parents had neglected to care for or supervise the children, as evidenced by the 4-year-old wandering away from home unsupervised.[27]

////

---

particular page, entry or narrative in the exhibit, as would be required if they were disputing the statements.   Exhibit E, according to plaintiffs, is a set of five Interrogatories and Answers. Plaintiffs do not direct the court to any specific Interrogatory or Answer.

[22] SUF ¶ 18.

[23] SUF ¶¶ 18 & 59.

[24] SUF ¶ 20.

[25] Eastburn Declaration at p.2 (Dkt. No 84-2).

[26] SUF ¶ 21.

[27] SUF ¶ 22.

5

Eastburn entered and photographed the motel room.[28] Based upon her observations of the room, Eastburn concluded that it carried "risks to any child's overall health."[29] Eastburn agreed with Webber's decision to place the children into temporary custody.[30]

Officer Webber spoke with the family, signed a "Protective Custody form,"[31] and took the children into protective custody.[32] The children were then turned over to Eastburn, who took the children to a foster placement.[33]

It is undisputed that the children were removed from the home and from their parents without a warrant.[34]

---

[28] Complaint ¶ 33; Answer ¶ 33. Defendants assert that Eastburn first obtained Ms. McLaughlin's consent to enter and photograph the room. Answer ¶ 33.

[29] Eastburn Decl. at p.3. Eastburn says she observed "mold and terrible odors from the motel room, piles of dirty dishes with crusty food, bedding which looked so filthy as to be gray, and a filthy toilet." Id.

[30] Eastburn's Response to Interrogatories (Dkt. No. 88-2) at p.23, No. 1.

[31] Officer Webber did not have a form of his own, so Eastburn provided him with a blank form. Eastburn Decl. at p.2.

[32] SUF ¶ 23.

[33] SUF ¶¶ 25 & 26.

[34] Complaint ¶ 41; Answer ¶ 41. The parties do not specify any specific "warrant" requirement. However, the court notes that California law sets forth a procedure for obtaining a court-issued warrant to place a minor child into "protective" custody. Under that procedure, a petition is filed in juvenile court:

> alleging that a minor comes within Section 300 and praying for a hearing thereon, ... and it appears to the court that circumstances of his or her home environment

On Monday, September 22, 2008, defendant Kate McCullough, an intake social worker for El Dorado County, received Eastburn's report on the Dowell children.[35] McCullough had had no prior involvement with this matter.[36] McCullough spoke to Eastburn and the parents, then filled out and filed a Juvenile Dependency Petition and a Detention Report with the El Dorado County Superior Court.[37] McCullough made no false statements in either filing, nor to CPS, nor in any other report.[38] The only factual allegation plaintiffs make against McCullough is that she prepared and filed these petitions in court.[39]

---

> may endanger the health, person, or welfare of the minor, ... a protective custody warrant may be issued immediately for the minor.

Cal. Welf. & Inst. Code § 340. However, the statute contains an exception that permits a peace officer to take a minor child into "temporary" custody without a warrant, when:

> the officer has reasonable cause for believing that the minor is a person described in Section 300, and, <u>in addition</u>, that ... the physical environment or the fact that the child is left unattended poses an immediate threat to the child's health or safety.

Id., § 305(a) (emphasis added).

[35] SUF ¶ 70.

[36] SUF ¶¶ 32-35, 37.

[37] SUF ¶¶ 39 & 40.

[38] SUF ¶ 47.

[39] In their opposition papers, and at oral argument, plaintiffs assert that McCullough was "responsible" for the children's "continued detention," but they do not explain how she was responsible. There is no allegation, for example, that she detained the children, that she participated in the decision to detain them, that she could have released them, or any other

7

On September 24, 2012, a detention hearing was held in El Dorado County Superior Court.[40]  That court found, among other things, that:

> there is a substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without removing the child from the physical custody of the parent or legal guardian.

The court accordingly ordered the children detained and placed in the temporary or protective custody of the county "child and family services agency."[41]

---

factual predicate for finding that she was responsible for the children's continued detention.

[40] SUF ¶ 52; Caufield Decl. (Dkt. No. 85), Exh. A (Dkt. No. 85-1) ("Findings and Orders after Detention Hearing").

[41] Caulfield Decl., Exh. A at p.10 (Dkt. No. 85-1).  At oral argument, defendants raised for the first time the "Rooker-Feldman" doctrine.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  That doctrine prevents federal district courts from hearing de facto appeals from state court judgments.  Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010), cert. denied, 562 U.S. __, 131 S. Ct. 1492 (2011).  Defendants have waived that argument by omitting it from their pleadings and their summary judgment papers, and raising it for the very first time at oral argument.

Even if defendants had not waived the argument, it does not apply here.  The materials submitted on this motion show that the state court ruled on whether it was proper to detain the children and place them into the temporary care of the county.  See Cal. Welf. & Inst. Code § 300 (description of children who made be made "a dependent child of the court").  Defendants have made no showing that the state court also ruled on whether it was proper to remove the children from their home without a warrant.  See Cal. Welf. & Inst. Code § 305 ("conditions allowing temporary custody without warrant").  This latter question – not shown to have been presented to or ruled on by the state court – is what is before this court.

8

**II.  SUMMARY JUDGMENT STANDARDS.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936 (9th Cir. 2011) (en banc) (same).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact"), citing Celotex v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the

burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>, 653 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

**III. ANALYSIS**

"Parents and children have a well-elaborated

10

1    constitutional right to live together without
2    governmental interference." <u>Wallis v. Spencer</u>, 202 F.3d
     1126, 1136 (9th Cir. 2000). "The Fourteenth Amendment
3    guarantees that parents will not be separated from their
     children without due process of law except in
4    emergencies." <u>Mabe v. San Bernardino County, Dep't of
     Pub. Soc. Servs.</u>, 237 F.3d 1101, 1107 (9th Cir. 2001).
5    Officials violate this right if they remove a child from
     the home absent "information at the time of the seizure
6    that establishes 'reasonable cause to believe that the
     child is in imminent danger of serious bodily injury and
7    that the scope of the intrusion is reasonably necessary
     to avert that specific injury.' " <u>Id.</u> at 1106 (<u>quoting</u>
8    <u>Wallis</u>, 202 F.3d at 1138). The Fourth Amendment also
     protects children from removal from their homes absent
9    such a showing. <u>Doe v. Lebbos</u>, 348 F.3d 820, 827 n.9
     (9th Cir. 2003).

<u>Rogers v. County of San Joaquin</u>, 487 F.3d 1288, 1294-95 (9th Cir. 2007) (emphasis added); <u>see</u> <u>Mueller v. Auker</u>, ___ F.3d ___, 2012 WL 5328669 at *3 (9th Cir. October 25, 2012) ("parents have a 'constitutionally protected right to the care and custody of [their] children' and cannot be 'summarily deprived of that custody without notice and a hearing,' except where 'the children [are] in imminent danger'") (citations omitted).

   **A.   Kate McCullough**.

   Plaintiffs concede that they have no claim against defendant McCullough for warrantless removal of the children, as she was not present when the children were removed, and had nothing to do with their removal.

   Plaintiffs assert that McCullough is, however, "responsible" for the "continued detention" of the children. The only possible basis for this assertion, as far as the court can see, is plaintiffs' allegation that McCullough filed a petition in Juvenile Court alleging "Failure To Protect" the children. However, there

11

1  is no allegation or assertion that she detained the children, had
2  any control over their detention, could have released the children,
3  or that her court filings were false or otherwise improper in any
4  way.  Plaintiffs concede that they are not suing McCullough for
5  filing the petition, and offer no other explanation for why they
6  are suing her.  She will be granted summary judgment as to all
7  claims against her.

**B.   Janice Eastburn.**

**1.   Continued Detention.**

The Complaint seems to be making a claim for "continued detention" of the children from the time of their removal from the motel on September 20, 2008 until April 2009.  Eastburn (and McCullough) seek summary judgment on this claim to the degree it challenges the detention of the children <u>after</u> the detention hearing on September 24, 2008.  In their opposition papers, plaintiffs have clarified that they only intend to include the period from the removal until the detention hearing on September 24, 2008. As best the court can tell, this is the claim for taking the children away without a warrant. Accordingly, defendants are entitled to summary judgment to the degree the Complaint asserts a claim against them for post-adjudication detention.  <u>See</u> <u>Coverdell v. Department of Social & Health Service</u>, 834 F.2d 758, 765 (9th Cir. 1987) (immunity for social worker executing court's order to take child into custody).

**2.   Familial Association.**

All defendants seek summary judgment on Claims One and Two on

12

the ground that they cannot be found to have violated plaintiffs' due process rights to "familial association" unless they engaged in conduct that "shocks the conscience." They go on to explain that their conduct could not shock the conscience since all Eastburn did was accept custody of children from a home that was undisputably not fit for human habitation. McCullough, meanwhile, did nothing, defendants argue, other than file truthful court papers in accordance with her job. Plaintiffs assert that defendants are using the wrong standard. A due process violation, they assert, is established when there is an "unwarranted interference" with familial association, and that the "shocks the conscience" test is inapplicable here. They argue that the removal of the children in this case was an unwarranted interference with familial association because it was done without the required warrant.

### a.   Due Process - The Legal Standard

Plaintiffs set forth the correct legal standard here. The claim is not a substantive due process claim. It is a procedural due process claim – the children were taken away without due process of law, namely, the required judicial warrant:

> To take a child into protective custody without a warrant, the officer must have reasonable cause to believe that harm will occur <u>in the period of time it would take to procure a warrant and remove the child from the home</u>.

Burke v. County of Alameda, 586 F.3d 725, 732 (9th Cir. 2009); Rogers, 487 F.3d at 1294-95 ("Officials, including social workers, who remove a child from its home without a warrant must have

13

reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant"), citing Mabe v. San Bernardino County, Dept. of Public Social Services, 237 F.3d 1101, 1108 (9th Cir. 2001).[42]

Defendants do not even assert that they could meet this standard. They present no evidence to show that they ever even considered the possibility of getting a warrant, or whether it could be obtained without risk to the children.[43] Indeed, in Rogers, the conditions in the home were significantly worse than there were in this case; nevertheless, summary judgment was denied to the defendants because they failed to show that there was a risk to the children if the defendants had taken the couple of hours they would need to get a warrant. In fact, the Rogers court granted summary judgment to plaintiffs on the procedural due process count, for defendants' undisputed failure to get a warrant.

It is the case that the conditions inside the McLaughlin home were deplorable, and it even appears to be undisputed that those conditions posed a risk to the children's health. However, it also

---

[42] If plaintiffs in fact are making a substantive due process claim, it is dismissed. They do not even argue that they meet the "shocks the conscience" test – which defendants correctly argue is the correct standard for such a claim.

[43] The conditions in the home were appalling, that is undisputed. But the question is whether a warrant could have been obtained in time without risk to the children. As noted above, the only evidence even touching this issue is the statement of Webber that mentions Section 305 (that permits the taking of children from their home without a warrant), but apparently confuses it with Section 300 (that authorizes children to be placed in temporary custody).

is undisputed that by the time Eastburn arrived on the scene, the children were no longer inside the home where the danger was. Rather, they were outside, in the vicinity of the porch.[44] Defendants have made no showing that the children could not safely have stayed on the porch (or that there was some other practical impediment to their staying there) until a warrant could be secured. Under these circumstances, this court is bound by Rogers to deny summary judgment to defendants.

### b.   Due Process - Qualified Immunity.

Defendants do not argue that the children could lawfully have been removed from their home without a warrant. They argue instead, that the removal does not shock the conscience, and that the police made the decision to remove – and actually effected the removal – while Eastburn only accepted custody of the children from the police.

The "shock the conscience" argument, however, invokes the wrong legal standard. Defendants, the moving parties, do not make any showing that no warrant was required. To the contrary, there is a complete failure of proof that the children were in imminent danger such that there was no time to obtain a warrant.

The only remaining basis for defendants' summary judgment motion, is that Eastburn herself did not remove the children, and did not make the decision to remove them. Viewing the evidence in

---

[44] However, the court notes that according to Eastburn, even from outside the motel room door, "the smell of the interior of the motel room reeked very strongly." Eastburn Decl. at p.3.

15

the light most favorable to plaintiffs, it appears that upon Eastburn's arrival at the scene, she discussed the situation with the police officers who were already present. Eastburn Deposition (Dkt. No. 88-2) p. 25 line 13 to p.34 line 12 (ECF pp.4-8). She made her own independent assessment that the children were living in an uninhabitable abode and needed to be removed, an assessment she shared with Webber. Id. She provided Officer Webber with the form needed to officially remove the children from the home. Id., at p. 34 lines 13-24 (ECF p.8).

It is true that Officer Webber, also, decided that the children needed to be removed from their parent's custody.[45] However, Webber made the decision, and took the children into custody, only after discussing the situation and "collaborating" with Eastburn and others on the matter. Id. Accordingly, a reasonable inference is that the decision to take the children without a warrant was made jointly by a group that included Eastburn.

Defendants do not directly contest this inference. Instead, they simply ignore the evidence that the decision was made jointly, and instead focus exclusively on Webber's statement that he made the decision, and evidence that the decision was made before Eastburn's arrival. There is such evidence, but there is also evidence that the decision was made jointly. Therefore, it is for the jury to decide how, when and by whom the decision was made.

---

[45] Webber Interrogatories (Dkt. No. 88-2) ¶¶ 1-4 (ECF pp.28-30).

1    If in fact, Eastburn participated in the decision to remove
2 the children without a warrant, she could be liable as an "integral
3 participant" in their removal, even if she was not the person who
4 actually removed them from their parents. See Boyd v. Benton
5 County, 374 F.3d 773 (9th Cir. 2004) (direct action not required
6 if defendant was an integral participant, for example by standing
7 guard while other officers searched a home); accord,
8 Anderson-Francois v. County of Sonoma, 2009 WL 1458240 (N.D. Cal.
9 2009) (finding triable issue of fact regarding whether social
10 worker integrally participated in the warrantless removal of
11 children), aff'd mem., 415 Fed. Appx. 6 (9th Cir. 2011).

### 3.  Damages.

Defendants seek partial summary judgment on the issue of damages. They argue that plaintiffs cannot offer competent evidence that they suffered actual damage from the violation of their due process rights, citing Carey v. Piphus, 435 U.S. 247 (1978). Carey said:

> where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983.

Carey, 435 U.S. at 263. The detention hearing found, unsurprisingly, that the children needed to be kept away from their parents, who could not care for them. Defendants appear to be arguing that therefore there can be no damages, or perhaps that there can be no damage from a violation of procedural due process.

17

In fact, a procedural due process violation can produce damages. Defendant's principal case on this issue provides that "mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983," and that:

> we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.

Carey, 435 U.S. at 263-64.

Moreover, there is competent evidence that the children suffered damage from the procedural violation. All the children testified that they were scared and worried when they were taken away from their parents.[46] At least one of the children testified that her fears would have been lessened if someone had explained to her what was going on. A jury could find that the failure to wait the couple of hours it would have taken to get a warrant deprived everyone involved – the parents, the police or the social worker – the time to explain why the children were being taken away and to lessen their fears.[47] If defendants believe that plaintiffs

---

[46] Dep. of M.M. (Dkt. No. 88-2) at p.85 lines 8-9 (ECF p.49), p.90 at 10-18 (ECF p. 53), p.97 line18 to p.98 line 16 (ECF pp. 54-55); Dep. Of H.M. (Dkt. No. 88-2) at p.86 lines 6-15 (ECF p.59); Dep. of C.M. (Dkt. No. 88-2) at p.104 lines 10-18 (ECF p.66).

[47] Defendants make much of the children's testimony that they do not know what a warrant is. The alleged damage, however, does not come from the children's knowledge or lack of knowledge of what a warrant is, but from the fear created in them in part by the failure of anyone to explain to them what was happening. It is for the jury to determine the value, if any, of such damage.

18

cannot prove their damages, they can present that case to a jury.

## IV. CONCLUSION

For the foregoing reasons:

1.  McCullough's motion for summary judgment in its entirety is **GRANTED**, and McCullough is dismissed from this case;

2.  The motions of Eastburn and County of El Dorado for summary judgment, are **DENIED** in their entirety;

3.  The court clarifies that this case does not include claims for:

    a.  Initiation of dependency proceedings;[48]

    b.  Judicial deception; or

    c.  Damages for detention after the detention hearing.[49]

IT IS SO ORDERED.

DATED: October 31, 2012.

                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT

---

[48] Eastburn asserts that she is immune from liability for initiating court dependency proceedings to take custody away from the McLaughlins, because she did not initiate the proceedings. However, plaintiffs are not suing her for this. Plaintiffs confirm this in their opposition papers. They are suing Eastburn for taking the children away from their parents and their home without a warrant.

Eastburn also asserts that she is not liable for submitting false statements to the court in the dependence proceedings. However, plaintiffs once again are not suing her for this, and do not allege that any false statements were submitted to the court. Plaintiffs confirm this is their opposition papers, also.

Defendants' motion is accordingly **DENIED** to the extent it seeks to dismiss these two non-existent claims.

[49] To the degree plaintiffs do assert any of these claims, they are dismissed for the reasons stated in defendants' summary judgment papers.